IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL MUCY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | Civil Action No. 20-1950 |
| | ) | |
| | ) | |
| TROOPER RICHARD NAGY and TROOPER | ) | Magistrate Judge Dodge |
| ZACHARY WEBB, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Michael Mucy brings this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Richard Nagy ("Nagy") and Zachary Webb ("Webb"), both of whom are troopers with the Pennsylvania State Police. Plaintiff contends that their actions violated his constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments. He also asserts a state law claim for malicious prosecution.

Presenting pending is Defendants' Motion to Dismiss the Amended Complaint (ECF No. 17). For the reasons that follow, their motion will be granted with respect to Counts II, III, IV and V and denied with respect to Counts I, VI and VII. Because it would be futile to allow amendment of the dismissed claims, dismissal will be with prejudice.

### I.    Relevant Procedural History

Plaintiff commenced this action in December 2020. After Defendants filed a motion to dismiss, Plaintiff filed an Amended Complaint (ECF No. 14). Federal question jurisdiction is based on the civil rights claims, 28 U.S.C. § 1331, and supplemental jurisdiction is asserted over the state law claim, 28 U.S.C. § 1367(a).

The Amended Complaint alleges claims of retaliation in violation of the First and Fifth

Amendments (Count I), unlawful arrest in violation of the Fourth Amendment (Count II), malicious prosecution, reckless investigation and an unlawful search and seizure in violation of the Fourth Amendment (Counts III, IV and VI, respectively), a stigma plus procedural due process claim in violation of the Fourteenth Amendment (Count V) and a state law claim of malicious prosecution (Count VII).[1]

Defendants' motion to dismiss (ECF No. 17) has been fully briefed (ECF Nos. 18, 20).

## II.    Facts Alleged in Amended Complaint

Late in the evening on December 20, 2018, Plaintiff was traveling home on Route 40 when his vehicle hydroplaned and spun out of control. Plaintiff was the only person in his vehicle and no other were vehicles involved in this incident. When his vehicle came to a stop on Route 40, it was facing the wrong direction in the opposite lane of travel. In order to avoid a further collision, Plaintiff immediately drove his car to the nearby Brownsville Walmart. (Am. Compl. ¶¶ 5-11.)

Once in the Walmart parking lot, Plaintiff noticed that although his vehicle was operable, one of the airbags had deployed. He decided to have the vehicle towed. He entered the Walmart where he made arrangements for his vehicle to be towed to a secure location. He did not abandon his vehicle. He also arranged for someone pick him up and drive him home and notified the Walmart management of the situation. (*Id.* ¶¶ 12-17.)

After Plaintiff arrived home, he received a telephone call from Webb demanding that he return to the Walmart to speak to Webb and Nagy about the accident. At the time, it was the middle of the night, pouring rain, and Plaintiff had no vehicle. As a result, Plaintiff exercised his freedom of speech and right to remain silent and refused Webb's demand that  he meet the state

---

[1] Counts I, IV and VI are asserted against both Defendants, while Counts II, III, V and VII are alleged only against Defendant Nagy.

troopers at Walmart.  (*Id.* ¶¶ 18-21.)

In retaliation for Plaintiff's exercise of these rights, Defendants insisted that the tow truck driver give them the key to his vehicle; then searched the vehicle, seizing two firearms and magazines; and instructed the tow truck driver to impound and hold the vehicle. Defendants did not obtain a search warrant to search and/or seize the vehicle or to seize any of Plaintiff's personal property. There were no circumstances that would permit Defendants to conduct a search or seizure without a warrant. Defendants also failed to review the Walmart video surveillance tapes to confirm Plaintiff's actions or proceed to Plaintiff's home in order to question him. (*Id.* ¶¶ 22-25.)

In further retaliation for Plaintiff's exercise of his freedom of speech and right to remain silent, Nagy unlawfully filed the following citations against him on December 22, 2018: (1) Driving Vehicle at Unsafe Speed (2) Driving on Roadways Laned for Traffic; (3) Careless Driving; (4) Reckless Driving; (5) Immediate Notice of Accident to Police Department; and (6) Duty to Give Information and Render Aid. Plaintiff alleges that Nagy lacked probable cause to file any of these charges and had no reasonable basis to believe that he had committed any of them. (*Id.* ¶¶ 26-29.)

At the time of the accident, Plaintiff was the elected constable of Redstone Township. He performed constable services throughout Fayette County, including serving warrants for various Fayette County offices including Fayette County magistrates. In retaliation for Plaintiff's exercise of his rights, Nagy contacted the offices of multiple Fayette County magistrates and officials and made false statements about Plaintiff. This included allegations that he had flipped his car and fled through the woods on foot. According to Plaintiff, these false statements were stigmatizing and damaged his reputation. He avers that Nagy's sole purpose in contacting

various Fayette County officials was to have the Plaintiff suspended from performing constable services. (*Id.* ¶¶ 30-34.) As a direct result of Nagy's false statements and the issuance of meritless citations, Plaintiff was suspended by the President Judge of Fayette County. Notice of this suspension was then forwarded to every Fayette County office.

In order to prolong Plaintiff's suspension, Nagy made multiple requests to continue the summary proceedings regarding the citations that had been issued. At the end of January 2019, Plaintiff was notified that his vehicle could be released from impound. All of Nagy's citations were dismissed in February 2019 and shortly thereafter, Fayette County officials lifted Plaintiff's suspension. After Plaintiff's attorney sent a written demand, Nagy notified him that he could pick up his firearms and magazines. (*Id.* ¶¶ 36-43.)

## III.  Discussion

### A.  <u>Standard of Review</u>

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. When dismissing a civil rights case for failure to state a claim, a court typically must allow a plaintiff to amend a deficient complaint, irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alston v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

### B.  Civil Rights Claims

Plaintiff asserts various civil rights claims in Counts I through VI. These claims are made under 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). *See also Baker*, 443 U.S. at 140; *Graham v. Connor*, 490 U.S. 386, 394 (1989).

1.  <u>First and Fifth Amendment Retaliation Claim</u>

Defendants contend that Plaintiff has not stated a claim for retaliation under either the First or Fifth Amendments because Plaintiff has not identified any protected activity. Plaintiff asserts that he exercised his right to freedom of speech under the First Amendment by refusing Defendants' request to return to Walmart as well as his Fifth Amendment right not to be a witness against himself. He claims that as a result of this refusal, he was retaliated against in various ways, including the issuance of citations without probable cause and false statements about his conduct.

The Court of Appeals for the Third Circuit has held that "official retaliation for the exercise of *any* constitutional right creates an actionable claim under Section 1983." *Anderson v. Davila*, 125 F.3d 148, 162 (3d Cir. 1997). *See also White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). A claim of retaliation for the exercise of First Amendment rights requires a constitutionally protected activity, retaliation against the plaintiff by a governmental entity and a causal relationship between the protected activity and the retaliation. *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). The same elements apply to a Fifth Amendment retaliation claim. *Feliciano v. Dohman*, 645 F. App'x 153, 155 (3d Cir. 2016).[2]

The Supreme Court has held that "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (citation omitted). With

---

[2] Defendants argue that Plaintiff cannot state a claim under the Fifth Amendment's due process clause because it applies to federal actors, not state actors. *See Dusenbery v. United States*, 534 U.S. 161 167 (2002). However, Plaintiff is not alleging a claim under the due process clause, but rather under the Fifth Amendment's compulsion clause, which states that no one "shall be compelled in any criminal case to be a witness against himself ." U.S. Const. amend. V. This provision applies to state actors. *See Curtis v. Wetzel*, 763 F. App'x 259, 265 (3d Cir. Feb. 13, 2019).

respect to the Fifth Amendment, "this prohibition not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984).

While Defendants suggest that Plaintiff had no right to refuse to participate in a police investigation under these circumstances, they cite no authority in support of this contention. Indeed, any such obligation would be in conflict with an individual's rights not to speak or to be a witness against himself. As such, Plaintiff has stated a plausible claim for retaliation pursuant to the First and Fifth Amendments at this stage of the case. *See Mearin v. Dohman*, 2009 WL 3127760, at *7 (E.D. Pa. Sept. 29, 2009) (prisoner could state a Fifth Amendment retaliation claim based on his choice not to incriminate himself when questioned about drug smuggling into the prison).[3]

Defendants alternatively argue that they are entitled to qualified immunity with respect to Plaintiff's claims under the First and Fifth Amendments. This doctrine shields government officials from liability unless they violated a constitutional right that was clearly established at the time of the alleged conduct. *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). The burden of pleading a qualified immunity defense rests with the defendant, not the plaintiff. *Thomas v. Independence Township*, 463 F.3d 285, 293 (3d Cir. 2006).

Defendants contend that "To date, there have been no Supreme Court cases (or a robust consensus of the circuits) holding that filing charges against an individual that refuses to return

---

[3] To the extent that Plaintiff alleges that Defendants' retaliation included false statements to his employer that resulted in his suspension, in such a scenario, the public official must "threaten" or "coerce" the third party to act. *See McLaughlin v. Watson*, 271 F.3d 566, 573 (3d Cir. 2001). Plaintiff does not allege any such facts in the Amended Complaint.

to the scene of a crash after reporting it is unconstitutional." (ECF No. 18 at 18.) That is not an accurate summary of Plaintiff's claims, however. Plaintiff also alleges that the Defendants lacked probable cause to issue any citations under the circumstances, including the fact that no one else was involved in the accident, the vehicle did not impede traffic, he removed it safely from the highway and arranged for it to be towed. Moreover, he alleges that Defendants conducted an improper search and seizure of his vehicle and made defamatory comments about him to his employer, all in retaliation for his exercise of his First and Fifth Amendment rights. "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Houston v. Hill*, 482 U.S. 451, 462-63 (1987).

Other courts addressing similar scenarios have denied motions to dismiss based on qualified immunity in these circumstances. *See Gallis v. Borough of Dickson City,* 2006 WL 2850633, at *8 (M.D. Pa. Oct. 3, 2006) ("It is beyond question that the right to be free from unreasonable seizures/false arrests under the Fourth Amendment is clearly established. Moreover, it would be improper to rule that it is not clearly established that a police officer cannot retaliate against someone for exercise of their political/speech rights by filing false charges against them."); *Harless v. City of Columbus*, 183 F. Supp. 2d 1024, 1031 (S.D. Ohio 2002) (at the time of this incident, it was clearly established that citizens have a First Amendment right to criticize government officials, and that an official's retaliation against a citizen for having exercised that right violates 42 U.S.C. § 1983). Thus, based on the allegations of the Amended Complaint, the Court cannot conclude at this juncture that Defendants are entitled to qualified immunity with respect to this claim.[4]

---

[4] The Supreme Court has held that a plaintiff who asserts a retaliatory arrest claim based on

As such, Defendants' motion to dismiss Count I against Nagy and Webb will be denied.

### 2. Fourth Amendment False Arrest and Malicious Prosecution Claims

In Counts II and III, respectively, Plaintiff alleges that Nagy subjected him to a false arrest and malicious prosecution in violation of his Fourth Amendment rights. Defendants argue that Plaintiff's claims fail because he did not suffer a deprivation of liberty as a consequence of a legal proceeding that is consistent with a seizure.

An arrest requires some seizure of the person through application of physical force or, where that is absent, submission to the assertion of authority. *See California v. Hodari*, 499 U.S. 621, 624 (1991). Plaintiff alleges only that citations were issued, not that he was physically arrested or otherwise forced to submit to an assertion of authority. As Plaintiff was not arrested, he cannot state a claim for false arrest under the Fourth Amendment. *See Penberth v. Krajnak*, 2008 WL 509174, at *14 (M.D. Pa. Feb. 21, 2008); *Moyer v. Borough of North Wales*, 2001 WL 73428, at *2 (E.D. Pa. Jan. 25, 2001); *see also Johnson v. Barker*, 799 F.2d 1396, 1399 (9th Cir. 1986). While Plaintiff contends that Defendants lacked probable cause to issue the citations, he was not arrested or required to submit to an authority.

Plaintiff's claim of malicious prosecution similarly fails. In *DiBella v. Borough of Beachwood*, 407 F.3d 599 (3d Cir. 2005), plaintiffs were issued a summons but were not arrested and no conditions were imposed on their liberty. Their liberty was restricted only by virtue of their required attendance at their subsequent municipal court trial. The Third Circuit held that while "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute

---

speech protected by the First Amendment generally must plead and prove the absence of probable cause for the arrest. *See Nieves v. Bartlett*, 139 S. Ct. 1715 (2019). It is not clear that this standard applies to a "retaliatory citation." In any event, Plaintiff has pleaded that the retaliatory citations were not based on probable cause, which is all that would be required at this stage of the proceedings.

a Fourth Amendment seizure," plaintiffs failed to state a claim for malicious prosecution "because their attendance at trial did not qualify as a Fourth Amendment seizure." *Id.* at 603. Thus, being issued citations and attending a court proceeding regarding these citations are not seizures that support a Fourth Amendment malicious prosecution claim. *See Colbert v. Angstadt*, 169 F. Supp. 2d 352, 356 (E.D. Pa. 2001).

Accordingly, Plaintiff cannot state a Fourth Amendment claim for false arrest or for malicious prosecution. Because it would be futile as a matter of law to allow amendment of these claims, Defendants' motion to dismiss Counts II and III against Nagy will be granted with prejudice.

3.  Reckless Investigation

In Count IV, Plaintiff alleges a claim against Nagy and Webb for "reckless investigation" under the Fourth Amendment. Among other things, Defendants argue that, to the extent this claim exists at all, it fails as a matter of law because they are entitled to qualified immunity.

Prior to 2018, some district courts had allowed plaintiffs to proceed with claims for reckless investigation under the due process clause of the Fourteenth Amendment. *See Thomas v. Stanek*, 2015 WL 757574, at *7 (W.D. Pa. Feb. 23, 2015); *Whitley v. Allegheny County*, 2010 WL 892207, *37 (W.D. Pa. Mar. 9, 2010), *aff'd,* 402 F. App'x 713 (3d Cir. 2010); *Johnson v. Logan*, 2016 WL 7187842, *6-7 (W.D. Pa. Dec. 12, 2016), *aff'd,* 721 F. App'x 205 (3d Cir. 2018). *But see Kelly v. Jones*, 148 F. Supp. 3d 395, 400 (E.D. Pa. 2015) (noting that the "contours of a stand-alone claim for failure to investigate are not well-defined within this Circuit" and therefore considering the officers' lack of investigation only as it pertained to the elements of a claim for malicious prosecution) (citation omitted).

In 2018, the Court of Appeals expressed "significant doubts about whether there is an

independent substantive due process right to be free from a reckless investigation." *Johnson v. Logan*, 721 F. App'x 205, 208 n.9 (3d Cir. 2018). Further, in *Geness v. Cox*, 902 F.3d 344 (3d Cir. 2018), the court stated that "such a claim, if cognizable, could only arise under the Fourth Amendment." *Id.* at 354 n.5.[5] The court reiterated this conclusion in *Harvard v. Cesnalis*, 973 F.3d 190 (3d Cir. 2020), noting that: "Even if [the plaintiff] had brought the reckless investigation claim under the Fourth Amendment, the officers would nevertheless be entitled to qualified immunity because this right was not clearly established at the time of the investigation." *Id.* at 207 n.9.

Because the right to be free from reckless investigation was not established at the time of the events at issue, Defendants are entitled to qualified immunity as to this claim.[6] In light of the futility of permitting amendment of this claim, *see Kramer v. City of Pittsburgh*, 2020 WL 5797940, at *2 (W.D. Pa. Sept. 29, 2020) (Bissoon, J.) (dismissing reckless investigation claim without leave to amend because the right was not clearly established); *Atherton v. Shaffer*, 2019 WL 1923040, at *4 (W.D. Pa. Apr. 30, 2019) (Kelly, M.J.) (same), Defendants' motion to dismiss Count IV against Nagy and Webb will be granted with prejudice.

### 4. Stigma-Plus Claim

In Count V, Plaintiff alleges a Fourteenth Amendment claim "stigma-plus" procedural

---

[5] Plaintiff cites *Braunstein v. Paws Across Pittsburgh*, 2019 WL 1458236 (W.D. Pa. Apr. 2, 2019), a case alleging a Fourteenth Amendment reckless investigation claim, not a claim under the Fourth Amendment. The court noted that, in *Johnson*, the Third Circuit "was not asked to decide the viability of a stand-alone reckless investigation claim" and therefore concluded that the viability of such a claim was still an open question. *Id.* at *9-10. Nevertheless, the court ultimately concluded that the defendants were entitled to qualified immunity because the right was not clearly established at the time the events occurred. *Id.* at *11.

[6] In addition, courts have found that Fourth Amendment claims (other than searches) require "a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Therefore, it is unlikely that Plaintiff could state a reckless investigation claim under the Fourth Amendment based upon being issued citations even if such a claim were clearly established.

due process against Nagy. Defendants contend that Plaintiff has failed to adequately allege the "plus" element of this claim.

Federal courts have long held that "reputation alone is not an interest protected by the Due Process Clause." *Clark v. Township of Falls*, 890 F.2d 611, 619 (3d Cir. 1993) (citing *Paul v. Davis*, 424 U.S. 693, 701-02 (1976)). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). In *Hill*, the Court of Appeals for the Third Circuit explained that:

> In the public employment context, the "stigma plus" test has been applied to mean that when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination," it deprives the employee of a protected liberty interest. *Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). The creation and dissemination of a false and defamatory impression is the "stigma," and the termination is the "plus." When such a deprivation occurs, the employee is entitled to a name clearing hearing.

*Id.* (footnote omitted).[7]

Plaintiff contends that Nagy made publicly false statements about him by contacting various County officials and telling them that he had crashed his vehicle and fled through the woods, thus establishing the stigma.[8] He further claims that Nagy's actions deprived him of his liberty interest in earning a living because he was suspended from his position as a constable, thereby establishing the "plus."

The Court of Appeals has found a sufficient "plus" in various circumstances, including a claim related to a right created by statutory law; deprivation of the right to pursue an occupation; injury to reputation while exercising free speech; and constructive discharge and the resulting

---

[7] The Court of Appeals reinstated Hill's procedural due process claim for deprivation of his liberty interest in his reputation to the extent that his claim sought a name-clearing hearing.

[8] Defendants have not challenged the stigma aspect of the claim and the Amended Complaint adequately alleges the stigma element.

damage to the ability to earn a living. *Good v. City of Sunbury*, 352 F. App'x 688, 691-92 (3d

Cir. 2009). As the *Good* court went on to note, however:

> In contrast, we have found the plaintiff's would-be "plus" too ethereal—and
> therefore insufficient to support a reputation-based due process claim—when the
> claimed harm was the "possible loss of future employment opportunities," *Clark
> [v. Township of Falls]*, 890 F.2d [611,] 620 (3d Cir. 1989)]; the "temporary
> removal from [customary] duties," *Edwards v. Cal. Univ. of Pa.*, 156 F.3d 488,
> 492 (3d Cir. 1998); the "den[ial of] a promotion and transfer[ ] ... from the
> position of manager ... to a [lower] supervisory position," *Robb v. City of
> Philadelphia*, 733 F.2d 286, 293 (3d Cir. 1984); and even outright "financial
> harm," *Sturm v. Clark*, 835 F.2d 1009, 1013 (3d Cir. 1987).

*Id.* at 692.

Plaintiff's allegation that he was temporarily suspended from his position as a constable

is comparable to the situations in which the Third Circuit found similar facts to be insufficient to

meet the plus element. *See also Razzano v. Sarandrea*, 431 F. Supp. 3d 650, 663 (W.D. Pa.

2019) (temporary loss of job prospect and self-imposed delay in pursuing job opportunities until

false information was corrected did not involve any separate constitutionally protected liberty or

property interest).

Moreover, Plaintiff has not cited—nor has this Court's research uncovered—a case in

which a court within the Third Circuit found that the "plus" element was adequately pleaded

when the plaintiff's employment interests were impacted by a third party rather than the

defendants. *See Grimm v. City of Uniontown*, 2008 WL 282344, at *30 (W.D. Pa. Jan. 31, 2008)

(Army captain who was relieved of his command and denied promotion opportunities after

police reported his arrest could not maintain a stigma-plus claim against the police). *See also

Mazur v. City of Pittsburgh*, 2019 WL 3068215, at *7 (W.D. Pa. July 12, 2019) (following

*Grimm*); *Carusone v. Kane*, 2017 WL 5188291, at *7 (M.D. Pa. Nov. 9, 2017) (same).

As noted in *Bassetti v. Boyertown Area School District,* 2017 WL 3480977, at *6 (E.D. Pa. Aug. 14, 2017), the Third Circuit has not expressly ruled on the issue of whether a third-party termination can satisfy the plus element of a stigma-plus claim. The *Bassetti* court reasoned, however, that *Hill's* definition of a stigma-plus claim and the underlying facts of that case can be read to imply that the actions constituting the stigma and the plus must both be performed by the defendant. *See also D & D Assocs., Inc. v. Board of Educ. of N. Plainfield*, 552 F. App'x 110, 114 (3d Cir. 2014) ("contractor's own actions in failing to apply properly for prequalification therefore intervened between the actions of the defendants and prequalification not being renewed. Such an attenuated connection is too strained to support a stigma-plus claim."); *WMX Techs., Inc. v. Miller*, 80 F.3d 1315, 1320 (9th Cir. 1996) ("the 'stigma-plus' test requires that the defamation be accompanied by an injury directly caused by the [defendant] rather than an injury caused by the act of some third party.")[9] Thus, Plaintiff cannot utilize his temporary suspension from his job as a constable by County authorities as the "plus" in his stigma-plus claim.

Plaintiff also suggests that the plus requirement is met by the deprivation of his rights under the First, Fifth and Fourth Amendments.With respect to his stigma-plus claim under the Fourth Amendment, Plaintiff cites to *Carbone v. City of New Castle*, 2016 WL 406291 (W.D. Pa. Feb. 3, 2016), which includes a discussion of a stigma-plus claim in a false arrest scenario. As noted in *Carbone* by Judge McVerry:

---

[9] Other courts of appeal have also reached this conclusion. *See, e.g., URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 10 (1st Cir. 2011) ("Where the stigma and the incremental harm— the 'plus' factor—derive from distinct sources, a party cannot make out a viable procedural due process claim. That is true even if both sources are government entities.") *But see Velez v. Levy*, 401 F.3d 75, 89 (2d Cir. 2005) ("perfect parity in the origin of both the 'stigma' and the 'plus' is not required to state the infringement of a 'stigma-plus' liberty interest.")

> Relying on *Gobel v. Maricopa County*, 867 F.2d 1201, 1205 (9th Cir. 1989) –
> which relied on *Marrero v. City of Hialeah*, 625 F.2d 499, 516-19 (5th Cir. 1980)
> – Plaintiff argues that defamatory statements made "in connection" with an
> unlawful arrest are actionable under § 1983, since the unlawful arrest provides the
> necessary "plus" factor. Assuming that there are certain cases when that may be
> true, *Marrero* and *Gobel* are distinguishable from this case and thus do not
> convince the Court that Plaintiff has validly stated a "stigma-plus" claim.

*Id.* at *5-6 (W.D. Pa. Feb. 3, 2016) (footnote omitted). After distinguishing these cases on the

ground that the allegedly defamatory statement was not made to the media or otherwise

published to members of the community, Judge McVerry further observed that:

> the Court wonders what "process" would be "due" to Plaintiff in the event that
> she could state a "stigma-plus" claim in this context, beyond that which is already
> required by the Fourth Amendment. "When such a deprivation occurs" in the
> public-employment context, "the employee is entitled to a name-clearing hearing."
> *Hill*, 455 F.3d at 236. But it seems unlikely that the same is required when a
> plaintiff claims that she was defamed in connection with an unlawful arrest.
> Plaintiff offers no argument on this point, and neither *Marrero* nor *Gobel* offers a
> clear answer, either. The Court also questions whether Plaintiff would be
> permitted to recover for harm to her reputation as an element of damages on her
> unreasonable search and seizure claim and for the damage to her reputation
> arising "in connection with" her false arrest, which smacks of allowing double
> recovery. *See Cooper v. Sedgwick Cnty.*, 206 F. Supp. 2d 1126, 1142 (D. Kan.
> 2002) (raising the same concerns). That assumes, of course, that "a plaintiff who
> prevails on a 'stigma-plus' claim" is even "entitled to remedies other than a name-
> clearing hearing" – a question our Court of Appeals has not decided. *Hill*, 455
> F.3d at 236. These looming questions confirm to the Court that Plaintiff's claim
> should be analyzed under the Fourth Amendment and the Fourth Amendment
> alone, as it clearly delineates the standards that apply in cases of this type.

*Id.* at *7.[10]

In this case, Plaintiff does not allege that he has any recognized property or liberty

interest apart from the harm to his reputation. Moreover, as explained above, as Plaintiff was not

---

[10] In addition, as Judge Horan observed in *Razzano*: "The *Marrero* Court did not find that the
'plus' prong was satisfied solely by the 'stigma' to the plaintiffs' reputation. The *Marrero* Court
relied on Florida law that recognizes a business's goodwill as a property interest. Mr. Razzano
does not establish that he has any similar property or liberty interest distinct from the harm to his
reputation." 431 F. Supp. 3d at 663 (citing *Marrero*, 625 F.2d at 514).

arrested or detained, he has not stated a Fourth Amendment claim for unlawful arrest or malicious prosecution. As such, he cannot rely upon an alleged "arrest" as the basis for the "plus" aspect of his stigma-plus claim. Finally, as noted in *Carbone*, Plaintiff cannot obtain a "name-clearing hearing" from Nagy and the damage to his reputation is likely recoverable if he ultimately prevails on his First and Fifth Amendment retaliation claims.

Lastly, while Plaintiff also asserts that the "plus" requirement is met by the alleged deprivation of his rights under the First and Fifth Amendments, he provides no explanation or authority for this assertion. Without any such support, this claim cannot be sustained.

Based on this analysis, it would be futile to allow Plaintiff to amend this claim. Therefore, with respect to Count V, Defendants' motion to dismiss will be granted with prejudice.

     5.  <u>Search and Seizure Claim</u>

In Count VI, Plaintiff alleges a claim against Nagy and Webb under the Fourth Amendment arising out of the search and seizure of his vehicle and property. Defendants contend that the search and seizure were valid under the community caretaking exception.

The Fourth Amendment protects people's right "to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures…" *Brown v. Muhlenberg Township*, 269 F.3d 205 (3d Cir. 2001). The Third Circuit has held that an individual challenging a search has the burden of establishing that he had a reasonable expectation of privacy in the property searched and the items seized, and must show both that he had a subjective expectation of privacy in the area searched and that his expectation was objectively reasonable. *United States v. Burnett*, 773 F.3d 122, 131 (3d Cir. 2014) (internal citation omitted). "To demonstrate that he had a subjective expectation of privacy, the defendant must show that he 'took normal

precautions to maintain his privacy.'" *Id.* (citation omitted).

Defendants argue that automobiles that are disabled due to a vehicular accident or mechanical failure are frequently taken into lawful police custody. *United States v. Abbott*, 584 F. Supp. 442, 447 (W.D. Pa.), *aff'd mem.*, 749 F.2d 28 (3d Cir. 1984). Further, the Supreme Court has found that the "authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976).

Based upon the allegations of the Complaint, however, Plaintiff's vehicle was not impeding traffic or threatening public safety or convenience. It had been moved by Plaintiff and was parked in the Walmart parking lot. Further, Plaintiff advised Walmart of the situation and there are no allegations that Walmart objected or asked the troopers to remove the vehicle.

In *Abbott*, a decision cited by the Defendants, the court indicated that:

> *Opperman* thereby imposes a three-prong standard upon the government to establish a bona fide inventory search. The government must demonstrate that Abbott's vehicle was in lawful police custody prior to its search; that the search was routine and conducted pursuant to standard police procedures following the guidelines laid down in *Opperman*; and that the search was conducted solely for the purpose of securing and inventorying the automobile's contents, and not for the purpose of gathering incriminating evidence against the owner.

584 F. Supp. at 447.

Here, whether Defendants can demonstrate that they met these standards cannot be determined at the motion to dismiss stage. Instead, the operative facts must be developed at a later stage in this proceeding.

With respect to the impoundment of the vehicle, the Third Circuit has adopted the reasonableness test and held that "the constitutionality of a community caretaking impoundment" under the Fourth Amendment is judged by focusing on the reasonableness of the impoundment

for a community caretaking purpose. *United States v. Smith*, 522 F.3d 305, 312-15 (3d Cir. 2008) (citing *United States v. Coccia*, 446 F.3d 223, 239 (1st Cir. 2006)). Reasonableness of the removal turns on "all the facts and circumstances of the case." *United States v. Miller*, 662 F. App'x 169, 172 (3d Cir. 2016) (quoting *Opperman*, 428 U.S. at 375). The "reasonableness analysis does not hinge solely on any particular factor." *Coccia*, 446 F.3d at 239. *See Miller*, 662 F. App'x at 172; *United States v. Hawkins*, 646 F. App'x 254, 257 n.4 (3d Cir. 2016).

Defendants rely on *United States v. Lawrence*, in which the court concluded than an objective observer would agree that by leaving his vehicle unsecured on the street and running away, Lawrence abandoned his vehicle, thereby "relinquishing any expectation of privacy he may have previously held in the vehicle and its contents." 2007 WL 925893, at *3 (E.D. Pa. Mar. 16, 2007).

The facts pleaded in this case are markedly different, however. According to the Amended Complaint, Plaintiff's vehicle was not disabled and was not in a public street or impeding traffic. Plaintiff advised Walmart that he had parked his car in its lot, locked his vehicle and arranged for a tow truck to remove the vehicle from Walmart's parking lot. Accepting the facts in the Complaint as true, as the Court is required to do, Defendants interfered with this process and ordered the tow truck driver to give them the key so that they could access Plaintiff's vehicle. They proceeded to search and impound the vehicle after Plaintiff refused to return to Walmart, actions that Plaintiff alleges were unnecessary and unwarranted under the circumstances. Thus, as pleaded, Plaintiff has demonstrated a reasonable expectation of privacy and at this stage, Defendants have failed to support their contention that the vehicle was searched and seized under a community caretaking function. Simply put, issues of fact preclude dismissal of this claim.

In addition, as Plaintiff notes, even a seizure that is reasonable at its inception may become unreasonable as a result of its duration. *See Segura v. United States*, 468 U.S. 796, 812 (1984). Defendants kept Plaintiff's property for approximately two months. Therefore, even if the original seizure is found to be lawful, there may be disputed issues of fact as to whether the length of the seizure was reasonable.

Finally, Defendants have not demonstrated that they are entitled to qualified immunity. As discussed previously, the right to be free from unreasonable seizures under the Fourth Amendment is clearly established. *See Gallis v. Borough of Dickson City,* 2006 WL 2850633, at *8 (M.D. Pa. Oct. 3, 2006). According to the Amended Complaint, Plaintiff's vehicle was not in lawful police custody—it was parked at a Walmart store with the permission of the store's management and Plaintiff had arranged for a tow truck to remove it. Thus, as pleaded, there was no basis for the police to conduct an inventory search, much less to seize the contents or impound the vehicle, actions which Plaintiff alleges Defendants took in retaliation for his exercise of his First and Fifth Amendment rights.[11] *See Pitts v. Delaware*, 646 F.3d 151, 156 (3d Cir. 2011) (jury would have to weigh testimony to determine whether police had probable cause for towing and searching the plaintiff's car). *See also Abbott*, 584 F. Supp. at 452 & n.5 (rejecting police argument that a vehicle was abandoned because, pursuant to their own procedures, a vehicle is not considered abandoned until it has been left for 48 hours).

---

[11] As noted above, in an inventory search, the government must demonstrate that the vehicle was in lawful police custody prior to its search; that the search was routine and conducted pursuant to standard police procedures following the guidelines laid down in *Opperman*; and that the search was conducted solely for the purpose of securing and inventorying the automobile's contents, and not for the purpose of gathering incriminating evidence against the owner. *See Whren v. United States*, 517 U.S. 806, 811 (1996) ("an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence") (footnote and citation omitted).

Thus, because the right to be free from unreasonable searches and seizures was established at the time of the events at issue, Defendants are not entitled to qualified immunity as to this claim Accordingly, Defendants' motion to dismiss will be denied.

6. <u>State Malicious Prosecution Claim</u>

Count VII alleges a state law claim of malicious prosecution against Nagy. Defendants contend that sovereign immunity bars this claim.

Under Pennsylvania law, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S. § 2310. "Exceptions to sovereign immunity are to be narrowly construed." *Dean v. Commonwealth, Dep't of Transp.*, 751 A.2d 1130, 1134 (Pa. 2000).

As noted by the Pennsylvania Supreme Court in *Justice v. Lombardo*, 208 A.3d 1057 (Pa. 2019):

> Our intermediate appellate courts have held that these protections shield an employee of a Commonwealth agency from the imposition of liability even for intentional torts. *See LaFrankie v Miklich,* 152 Pa. Cmwlth. 163, 618 A.2d 1145, 1149 (1992). In the present case, it is undisputed that Trooper Lombardo, as an employee of the PSP, is entitled to the protections of sovereign immunity for conduct within the scope of his duties, subject only to certain exceptions not applicable here. *See* 1 Pa. C.S. § 2310; *see also* 42 Pa. C.S. §§ 8521, 522(b)(1)-(9); *LaFrankie,* 618 A. 2d at 1149. Thus, judgment could only be entered against Trooper Lombardo in this matter if he was acting outside the scope of employment…

*Id.* at 1067. There are ten exceptions to sovereign immunity, none of which apply here. 42 Pa. C.S. § 8521(a), § 8522(b).[12]

---

[12] Pennsylvania intermediate courts have held that "intentional tort claims … are not within the narrow exceptions set forth in 42 Pa. C.S. § 8522(b)." *Faust v. Commonwealth Dep't of Revenue*, 592 A.2d 835, 839 (Pa. Commw. 1991). *See also Ioven v. Nestel*, 150 A.3d 571, 574 (Pa. Commw. 2016). "Even where a plaintiff asks for monetary damages against a defendant in his individual capacities, sovereign immunity applies." *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672,

Thus, the pivotal issue in assessing sovereign immunity is whether an employee acted within or outside the scope of his duties. This is a question of state law. Pennsylvania applies the principles from the Restatement (Second) of Agency to determine if conduct of an employee is within the scope of his employment. *Justice v. Lombardo*, 208 A.3d 1057, 1067 (Pa. 2019). *See also Brumfield v. Sanders,* 232 F.2d 376, 380 (3d Cir. 2000). As summarized in *Schell v. Guth*, 88 A.3d 1053 (Pa. Commw. 2014), the applicable criteria to resolve scope-of-employment issues are as follows:

> Conduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated at least in part, by a purpose to serve the employer; and if force is intentionally used by the employee against another, it is not unexpected by the employer. (citations omitted). These criteria mirror those contained in Section 228 of the Restatement (Second) of Agency . . .

*Id.* at 1067.

Because sovereign immunity is an affirmative defense, the defendant bears the burden of proof on this issue. *Id.*; *see also Justice*, 208 A.3d at 1068. Where the facts and inferences to be drawn from the facts are not in dispute, the court may determine the scope as a matter of law. *Justice*, *id.* On the other hand, when more than one inference can be drawn, this issue must be resolved by the factfinder. *Id.* (whether state trooper's conduct was for a purpose to serve the state police or "out of personal animus" was for the jury to decide.)

Plaintiff's malicious prosecution claim relates to the issuance of traffic citations, a quintessential function of the state police. "Where a state trooper is on duty and investigating a crime throughout the duration of the alleged offenses, she is acting within the scope of her

---

682 (M.D. Pa. 2010) (citation omitted). "Sovereign immunity applies to intentional and negligent torts." *Id.* (citation omitted). This differs from the statute concerning local agency employees, whose immunity is lost when their actions represent a "crime, actual fraud, actual malice or willful misconduct." 42 Pa. C.S. § 8550.

employment and sovereign immunity will require the dismissal of state law claims against her."

*DeForte v. Borough of Worthington*, 364 F. Supp. 3d 458, 487 (W.D. Pa. 2019) (citing *Mitchell*,

680 F. Supp. 2d at 683), *aff'd*, 844 F. App'x 511 (3d Cir. 2021).

However, Plaintiff also alleges that the citations were issued by Nagy in retaliation to the

Plaintiff's exercise of his freedom of speech rights as well as his right to remain silent, and that

Nagy lacked probable cause for the citations he issued.  Thus, Plaintiff argues, Nagy was acting

outside the scope of his employment.[13] Assuming that these allegations are true, as the Court

must do, an inference can be drawn that the issuance of citations was motivated solely for

retaliatory purposes and without any purpose to serve the Pennsylvania State Police.  Thus, at

this juncture, the Court cannot conclude as a matter of law that Plaintiff's state claim of

malicious prosecution is barred by sovereign immunity. *See, e.g., Justice,* 208 A.3d at 1073

(whether the trooper's conduct was "actuated for a purpose to serve the PSP or, instead, out of

some personal animus" was a question for the jury); *Perkins v. Staskiewicz,* 2009 WL 693176 * 4

(M. D. Pa. March 13, 2009) (noting in denying motion to dismiss that defendant's "knowledge

that he was making an unlawful arrest is important because it takes conduct that would have been

within the scope of his employment as a police officer—investigating complaints and making

arrests—outside the scope of employment because it no longer serves the interests of the

employer"); *Weimer v. Cnty. of Fayette,* 2018 WL 4385242, at *12 (W.D. Pa. Sep. 14, 2018)

(denying motion to dismiss based on sovereign immunity); *Sarin v. Magee,* 333 F. Supp. 3d 475,

483 n.5 (E.D. Pa. 2018) ("perjury would be completely inconsistent with the legitimate interests

---

[13]  "[I]n Pennsylvania, a plaintiff alleging common law malicious prosecution must show (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." *Merkle v. Upper Dublin Sch. Dist.,* 211 F. 3d 782, 791 (3d Cir. 2000) (citation omitted).

of the Pennsylvania State Police and the Commonwealth."); *Lockhoff v. Slonaker,* 2017 WL 2423790, at \*16 (E.D. Pa. June 5, 2017) ("Because knowingly submitting false allegations to a prosecutor would not serve the interests of the Pennsylvania State Police or be otherwise justified by a legitimate penological purpose, such activity falls outside a Trooper's scope of employment, and so sovereign immunity is unavailable.")

In short, whether Nagy was acting within the scope of his employment is a question of fact issue that must be developed during discovery and determined on summary judgment or at trial. Therefore, with respect to Count VII, the motion will be denied.

## IV.    Conclusion

For the reasons explained above, Defendants' motion to dismiss (ECF No. 17) will be granted with prejudice with respect to Counts II, III, IV and V and denied with respect to Counts I, VI and VII.

An appropriate order follows.


/s/Patricia L. Dodge
Dated:  August 3, 2021                    PATRICIA L. DODGE
                                          United States Magistrate Judge